IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Communications Workers of
America,

                Plaintiff,     Case No. 1:20-cv-911-MLB

v.

AT&T Mobility LLC,

                Defendant.

_____/

## OPINION & ORDER

Plaintiff Communications Workers of America sued Defendant AT&T Mobility LLC for refusing to arbitrate a dispute in violation of the parties' collective bargaining agreement. Defendant moves to dismiss for lack of subject matter jurisdiction or, alternatively, for failure to state a claim. (Dkt. 6.) The Court denies Defendant's motion.[1]

---

[1] Defendant also moves for leave to file a supplemental authority in support of its motion to dismiss. (Dkt. 25.) Plaintiff filed no response, "indicat[ing] that there is no opposition to the motion." LR 7.1(B), NDGa. Defendant's unopposed motion is granted.

## I.     Background

In February 2018, the parties signed a contract ("Agreement") under which Defendant agreed to recognize Plaintiff as "the sole collective bargaining agent" for a subset of Defendant's employees (identified by their job titles) in the Southeastern region of the United States. (Dkts. 1 ¶ 2; 1-1 at 4.)[2] Article 2 of the Agreement specifically excludes "Outside Premise Sale Representatives" from Plaintiff's representation. (Dkt. 1-1 at 4.) It also requires Defendant to notify Plaintiff of "any newly created [job] titles" and to work with Plaintiff to establish wage rate for those titles. (*Id.*) Article 17 requires Defendant to "notify [Plaintiff] when new employees enter the Bargaining Unit" and requires the parties to "apply the terms of this Agreement fairly in accord with its intent and meaning and consistent with [Plaintiff's] status as exclusive bargaining representative of all employees in the Bargaining Unit." (*Id.* at 28.)

---

[2] Defendant has introduced evidence about similar collective bargaining agreements between the parties governing other regions of the United States. (*See* Dkt. 6-2; *see also* Dkt. 17-1.) This evidence is immaterial to our case, which turns entirely on the Southeastern Agreement.

Article 7 of the Agreement establishes a "grievance procedure" for resolving any "complaint by [Plaintiff] . . . [a]lleging violation of the provisions or application of the provisions of th[e] Agreement." (*Id.* at 10.) Under this procedure, Plaintiff must submit the grievance to Defendant, the parties must discuss it, and Defendant must then decide what to do about it. (*Id.* at 10–12.) If the grievance "involve[s] true intent and meaning" of the Agreement, it counts as an "Executive Level Grievance" and must be handled "at the District level." (*Id.* at 12.) Article 9 of the Agreement says either party may compel the other to arbitrate an Executive Level Grievance if the grievance procedure does not result in a resolution. (*Id.* at 15.)[3]

In July 2019, Plaintiff initiated an Executive Level Grievance claiming Defendant violated Articles 2 and 17 by "1) diverting bargaining unit work outside of the bargaining unit and coverage of the Agreement; 2) violating the true intent and meaning of the 'Outside Premise Sales Representative' exclusion of Article 2, Section 1; and 3) failing to comply

---

[3] Article 9 says: "If at any time a controversy should arise regarding the true intent and meaning of any provisions of this Agreement, . . . which the parties are unable to resolve by use of the grievance procedure, the matter may be arbitrated upon written request of either party to this Agreement." (Dkt. 1-1 at 15.)

3

with the Article 2, Section 2 process regarding [four specific] newly created job classifications." (Dkt. 1-2 at 3.) The parties discussed the grievance at a telephonic hearing in August 2019. (Dkt. 1-3.) Later that month, Defendant denied Plaintiff's grievance, claiming the new job titles count as "Outside Premise Sale Representatives" that are excluded from the Bargaining Unit under Article 2 of the Agreement. (*Id.*)

In September 2019, Plaintiff sent Defendant a written request to arbitrate the grievance. (Dkt. 1-4.) After some back and forth, Defendant told Plaintiff it objected to arbitration because "the grievance appears to raise a representational issue that is within the jurisdiction of the NLRB," meaning "an arbitrator . . . lacks jurisdiction to resolve the underlying dispute." (Dkt. 1-9.) Defendant refuses to participate in any arbitration of the grievance. (Dkt. 1 ¶ 21.)

Plaintiff filed this lawsuit in February 2020, claiming Defendant "is in breach of the parties' [Agreement] by failing and refusing to arbitrate [the] Grievance." (Dkt. 1 ¶ 23.) Defendant now moves to dismiss for lack of subject matter jurisdiction or, alternatively, for failure to state a claim.

## II.     Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant claims the Court lacks subject matter jurisdiction over this case because it involves "representational" issues reserved to the National Labor Relations Board ("NLRB") under the National Labor Relations Act ("NLRA").  Plaintiff says this case involves "contractual" issues over which the Court has jurisdiction under the Labor Management Relations Act ("LMRA").  The Court agrees with Plaintiff.

### A.     Legal Standard

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).  "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.*  "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.*  Defendant lodges a factual attack here.  (*See* Dkts. 6-2;

5

20 at 8.) This means the "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008).

### B. The NLRA and the LMRA

"The [NLRA] establishes a federal regime for managing labor relations and generally authorizes the [NLRB] to resolve disputes between labor organizations and employers." *Dist. No. 1 v. Liberty Mar. Corp.*, 815 F.3d 834, 839 (D.C. Cir. 2016) ("*Liberty I*"). "[T]he NLRB's jurisdiction is in general exclusive; that is, if a claim falls within the purview of the NLRB, state and federal courts are preempted from hearing it." *Id.* A claim falls within the purview of the NLRB if it cannot be resolved without deciding "representational" issues under the NLRA. Such "representational" issues include employees' organizational rights under Section 7, "unfair labor practices" under Section 8, and "the unit appropriate for the purposes of collective bargaining" under Section 9. 29 U.S.C. §§ 157–159; *see Dist. No. 1 v. Liberty Mar. Corp.*, 933 F.3d 751, 757 (D.C. Cir. 2019) ("*Liberty II*") ("[W]hen an activity is arguably subject to § 7 or § 8 of the NLRA, the federal courts must defer to the exclusive competence of the NLRB. Suits implicating § 7 or § 8 of the NLRA are

6

often described as 'representational.'"); *Kern v. Goebel Fixture Co.*, 765 F.3d 871, 874 (8th Cir. 2014) ("§ 9(b) deprives federal courts of jurisdiction to decide representational questions that require determination of the appropriate collective bargaining unit."); *Local 682 v. Bussen Quarries, Inc.*, 849 F.2d 1123, 1125 (8th Cir. 1988) ("§ 9 of the National Labor Relations Act rests jurisdiction in the NLRB to determine questions of representation.").

"The [LMRA] carves out an exception to the NLRB's exclusive jurisdiction." *Liberty I*, 815 F.3d at 840. Specifically, Section 301(a) grants federal courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). This includes, of course, suits for breach of collective bargaining agreements. "Congress deliberately chose to leave the enforcement of collective agreements to the usual processes of the law" rather than sending them to the NLRB for resolution. *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 513. "Thus, if a labor dispute is contractual, [NLRB] preemption does not apply; instead, the aggrieved party can sue on the contract in federal court." *Liberty I*, 815 F.3d at 840.

## C. Analysis

Defendant says the Court lacks jurisdiction here because Plaintiff's underlying grievance cannot be resolved without deciding representational issues reserved to the NLRB. (*See, e.g.*, Dkts. 6-1 at 13; 20 at 5.) But Plaintiff is not asking the Court to resolve the underlying grievance; it is asking the Court to let an arbitrator do so. The Court need not decide any representational issues in order to rule on that request. It need only determine whether the Agreement's arbitration clause covers Plaintiff's grievance. That is a pure question of contract over which the Court has jurisdiction under Section 301 of the LMRA. Indeed, Defendant does not even try to argue otherwise. *See Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 241 (1962) ("The Congress has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate."); *Liberty II*, 933 F.3d at 760 ("subject matter jurisdiction was established under Section 301 of the LMRA" because "[t]he suit requires a judicial determination as to whether an arbitration clause in the agreements between [the parties] covers the dispute"); *Dist. No. 1 v. Liberty Mar. Corp.*, 330 F. Supp. 3d 363, 371 n.7 (D.D.C. 2018), *rev'd on*

*other grounds*, *Liberty II*, 933 F.3d 751 ("Defendant challenges the Court's jurisdiction under Section 301, arguing that [plaintiff's] suit is representational, not contractual, in nature. But plaintiff's suit plainly requires deciding a contractual matter: whether the arbitration clause covers the dispute at issue."); *Dist. Council No. 38 v. Williams Contracting, Inc.*, 479 F. Supp. 479, 481 (N.D. Ga. 1979) ("For some time it has been recognized that proceedings in the courts to enforce arbitration involve determination of contractual rights.").

Perhaps Defendant means the Court has no authority to compel arbitration of representational issues *even if* it need only resolve contractual questions in order to do so. The theory might be that the downstream representational effect of the Court's contractual decision somehow takes away the jurisdiction otherwise granted by Section 301. Or that the Court cannot (as a matter of jurisdiction) send the grievance to an arbitrator because *the arbitrator himself* lacks authority to decide the representational issues allegedly bound up in the grievance. But both of these theories suffer from the same "fatal flaw: [they] conflate[] the type of claim with the effect of a claim's enforcement." *Liberty I*, 815 F.3d at 843 (rejecting defendant's argument for NLRB preemption). Section

9

301 gives federal courts jurisdiction over a certain type of claim: "Suits for violation of contracts between an employer and a labor organization." The statute does not condition that jurisdiction on what might happen after the Court decides the claim. Because Plaintiff's claim is a contractual one, the Court has jurisdiction to decide it under Section 301.

All of this is bad news for Defendant. But the final death knell lies in the caselaw, which has recognized for more than 50 years that "Section 301 gives a federal court jurisdiction over a suit to enforce an arbitration clause in a collective bargaining agreement even if the case is 'truly a representation case' that could also be heard by the NLRB." *Liberty II*, 933 F.3d at 758 (citing *Vaca v. Sipes*, 386 U.S. 261, 267-68 (1967); *see Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 272 (1964) ("However the dispute be considered—whether one involving work assignment or one concerning representation—we see no barrier to use of the arbitration procedure."); *Retail Clerks Local 588 v. N.L.R.B.*, 565 F.2d 769, 778 (D.C. Cir. 1977) ("[C]ourts [have the] power to compel contractually authorized arbitration even as to matters that, in whole or in part, implicate representational issues.").

Our own Circuit has been just as clear.  *See Sea-Land Serv., Inc. v. Int'l Longshoremen's Ass'n of N.Y., N.Y.*, 625 F.2d 38, 43 (5th Cir. 1980) ("[T]he existence of . . . concurrent NLRB jurisdiction is quite plainly extraneous to the arbitral process.  It frequently happens that an alleged contractual default will also constitute an unfair labor practice; yet notwithstanding NLRB jurisdiction over the latter, the parties may nevertheless be enjoined to arbitrate the dispute."); *Int'l Union v. E-Sys., Inc.*, 632 F.2d 487, 489–90 (5th Cir. 1980) ("The fact that the issue is in a sense a 'jurisdictional' one as to whether the contract covers the particular employees is not a limitation upon the promise to arbitrate. . . . [T]he existence of a possible remedy with the Board does not bar enforcement of the collective contract under section 301."); *Gen. Warehousemen & Helpers Local 767 v. Standard Brands, Inc.*, 579 F.2d 1282, 1292 (5th Cir. 1978) ("[T]he [Supreme] Court endorsed arbitration as a means to solve . . . representation disputes, even though the NLRB could entertain [the] charges."); *Int'l Union of Operating Engineers, Local 279 v. Sid Richardson Carbon Co.*, 471 F.2d 1175, 1177 (5th Cir. 1973) ("The representational nature of the question alone is an insufficient basis to deprive parties of contracted for arbitration."); *Boire v. Int'l Bhd.*

*of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 479 F.2d 778, 794 (5th Cir. 1973) ("[W]e have in fact compelled and enforced arbitration in cases where representation matters were in issue."); *United States Gypsum Co. v. United Steelworkers of Am., AFL-CIO*, 384 F.2d 38, 48 (5th Cir. 1967) (dismissing argument that the underlying grievance was "exclusively within the Board's jurisdiction" because it was not a "reason[] outlaw[ing] this claim from arbitration").[4]

Defendant's jurisdictional argument simply collapses under the weight of this authority. The Court denies Defendant's motion to dismiss for lack of subject matter jurisdiction.[5]

---

[4] *See also Oleson's Food Stores v. Local 876 United Food & Commercial Workers*, 797 F. Supp. 591, 595 (W.D. Mich. 1991) ("Several Circuits have allowed arbitration of representational questions."); *Lanco Coal Co. v. S. Labor Union, Local No. 250*, 320 F. Supp. 273, 275 (N.D. Ala. 1970) ("[T]he issue of representation can . . . be subject to arbitration.").

[5] Notably, Defendant never disputes that Plaintiff's grievance includes *some* contractual elements; Defendant instead claims the grievance is "*primarily* representational" and that this is enough to preclude jurisdiction. (Dkt. 6-1 at 8 (emphasis added).) "[S]ome circuits [do] examine the major issues to be decided [in a Section 301 case] and determine whether they can be characterized as primarily representational or primarily contractual in order to dismiss primarily representational claims" for lack of jurisdiction. *Liberty II*, 933 F.3d at 758–59. But "[n]either the Supreme Court nor this [Circuit] have required such an inquiry." *Id.* at 758. And there is good reason to think "hybrid claim[s] raising both contractual and representational

12

### III. Motion to Dismiss for Failure to State a Claim

Defendant next claims that, even if the Court has jurisdiction here, it should dismiss this case on the merits because Plaintiff's underlying grievance does not fall within the scope of the arbitration clause (meaning Defendant did not violate the Agreement by refusing to arbitrate it). The Court again disagrees.

#### A.   Legal Standard

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires more than a "mere possibility of misconduct." *Id.* at 679. Plaintiff's well-pled

---

questions . . . are subject to the concurrent jurisdiction of the NLRB and the federal courts." *Id.* at 759; *see William E. Arnold Co. v. Carpenters Dist. Council of Jacksonville & Vicinity*, 417 U.S. 12, 16 (1974) ("When . . . the activity [arguably subject to the NLRA] also constitutes a breach of a collective-bargaining agreement, the Board's authority is not exclusive and does not destroy the jurisdiction of the courts in suits under s 301.").

13

allegations must "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In making this plausibility determination, the court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences." *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010). But the court need not credit "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004). In other words, "labels and conclusions" are disregarded, and "formulaic recitation[s] of the elements of the cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

**B.  Analysis**

"[T]here is a strong national policy favoring labor arbitration." *Firestone Tire & Rubber Co. v. Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-CIO*, 476 F.2d 603, 605 (5th Cir. 1973); *see Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014). But, even in the labor context, arbitration remains "a matter of contract and a party cannot be required to submit to arbitration any

14

dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). For that reason, "the judicial inquiry under [section] 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). Defendant says it did not agree to arbitrate Plaintiff's grievance here because the grievance falls outside the arbitration clause.

The arbitration clause covers any "controversy . . . regarding the true intent and meaning of any provisions of this Agreement." (Dkt. 1-1 at 15.) Plaintiff's grievance claims (1) Defendant wrongly classified certain employees as "Outside Premise Sale Representatives" under Article 2, Section 1 of the Agreement, and (2) Defendant failed to work with Plaintiff to establish the wage rate for those employees in violation of Article 2, Section 2 of the Agreement. The former assertion raises a pure dispute about the "meaning" of a specific phrase in the Agreement—"Outside Premise Sale Representatives"—so it falls squarely within the arbitration clause. The latter assertion raises a dispute about Defendant's compliance with a specific provision in the Agreement.

Although it does not identify the exact language about which the parties disagree, the record suggests the contested language includes the phrases "Bargaining Unit" and (again) "Outside Premise Sales Representative." Defendant believes that Article 2, Section 2 "only applies to job classifications 'in the Bargaining Unit'"—and that the job classifications at issue in this case do not fall within the Bargaining Unit because they count as "Outside Premise Sale Representatives." (Dkts. 1-3; 6-1 at 11–12.) This reflects a dispute about "the true intent and meaning" of these contractual phrases, meaning the dispute falls within the arbitration clause. Even if there were any doubt about these conclusions, the Court would resolve that doubt in favor of arbitrability. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010) ("[A]ny doubts concerning the scope of arbitral issues should be resolved in favor of arbitration."); *United Steelworkers*, 363 U.S. at 582–83 ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts

should be resolved in favor of coverage."). The Court thus denies Defendant's motion to dismiss for failure to state a claim.[6]

## IV. Conclusion

The Court **DENIES** Defendant's Motion to Dismiss Plaintiff's Complaint (Dkt. 6) and **GRANTS** Defendant's Motion for Leave to File Supplemental Authority (Dkt. 25).

**SO ORDERED** this 5th day of February, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff's grievance also says Defendant is "diverting bargaining unit work outside of the bargaining unit and coverage of the Agreement." This assertion, unlike the others, is not tied to a specific provision of the Agreement. It is unclear whether it is a stand-alone substantive complaint or whether it is an element or extension of the other portions of the grievance. Either way, Defendant has not shown it brings the grievance outside the scope of the arbitration clause or otherwise requires dismissal of this case.