UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 10

**AT&T MOBILITY SERVICES, LLC**
    **Employer/Petitioner**
 **and**                 Case 10-UC-280972

**COMMUNICATIONS WORKERS OF AMERICA**
    **Union**

### DECISION AND ORDER CLARIFYING BARGAINING UNIT

  AT&T Mobility Services, LLC (Employer) filed this petition, on August 6, 2021, seeking to clarify the bargaining unit to exclude its Integrated Solutions Consultant (ISC) and Integrated Sales Support Specialist (ISSS) positions. The Communications Workers of America (Union) argues that these positions should be included in the existing bargaining unit.[1]

  For the reasons set forth below, I find that the ISC and ISSS positions comprise their own appropriate unit and do not share an overwhelming community of interest with the positions in the existing unit. I further find that the disputed positions perform duties related to outside sales that the parties have historically excluded from the unit, both in practice and by contract. Accordingly, I am clarifying the unit to exclude the Employer's ISC and ISSS positions.

  **I.**  **Facts**

  *A.* *The Employer's Operations and the Parties' Bargaining History*

  The Employer provides wireless telecommunications services and operates retail stores throughout the United States. The Union represents approximately 35,000 of the Employer's employees pursuant to various collective-bargaining agreements. One of these collective-bargaining agreements is the so-called "Black CBA," which covers 9,727 employees in various classifications. The current Black CBA is effective from February 10, 2018, through February 11, 2022. The employees covered by the Black CBA work in Kentucky, Tennessee, North Carolina,

---

[1] The Employer filed this petition under Section 9(c) of the National Labor Relations Act (Act). The Region held a hearing before a hearing officer of the National Labor Relations Board (Board) via videoconference on August 30 and 31, 2021. I have the authority to hear and decide this matter on behalf of the Board under Section 3(b) of the Act. Based on that authority, I find that the hearing officer's rulings are free from prejudicial error and are affirmed; the Employer is engaged in commerce within the meaning of the Act; the Union is a labor organization within the meaning of the Act; and a question affecting commerce exists concerning the representation of certain employees of the Employer.

AT&T Mobility Services LLC
Case 10-UC-280972

South Carolina, Georgia, Alabama, Mississippi, Louisiana, and Florida.[2] These bargaining unit employees fall into three broad categories: retail store employees, call center employees, and network technicians.[3] The Employer's retail store employees and their duties are at issue here.

There are approximately 400 company-owned retail stores within the Black CBA's geographic jurisdiction. Bargaining unit employees classified as Retail Sales Consultants (RSC) work in these stores. Bargaining unit employees working in the classification of Sales Support Representative (SSR) also worked in these stores; however, the Employer eliminated the SSR classification in 2018.[4]

RSCs are responsible for serving customers who visit retail stores. Most customers who visit retail stores are part of the Employer's established customer base and have already decided to upgrade their existing products before entering the store. Only about 20 percent of retail sales are to new customers. RSCs use a point-of-sale system called OPUS to serve the customers. OPUS is used in all of the Employer's retail sales channels and has an inventory function. RSCs, however, are not responsible for inventory; a store manager is exclusively responsible for securing and monitoring the store's inventory. RSCs do not have independent authority to waive activation fees, to waive restocking fees, or to issue most discounts. Rather, RSCs work under active supervision at virtually all times. RSCs work assigned shifts in the stores, and their breaks are scheduled at the Employer's discretion.

The Employer sells its products through multiple channels in addition to its company-owned retail stores. These channels include direct mail sales, door-to-door sales, online sales, sales made in third-party retail stores, and sales made by employees to businesses, governmental entities, and educational institutions. Only the employees who work in the company-owned retail stores are members of the bargaining unit. In fact, the Black CBA's recognition clause explicitly excludes "Outside Premise Sale Representatives."[5] During 2006 contract negotiations, the Union

---

[2] The parties also have a "Green CBA" covering Puerto Rico; a "Purple CBA" covering Missouri, Oklahoma, Kansas, Arkansas, and Texas; and an "Orange CBA" covering the other 36 states. Only the Black CBA is at issue here.

[3] The bargaining unit classifications are: Administrative Assistant, Business Customer Service Specialist I, Business Customer Service Specialist II, Clerk, Client Service Specialist, COS Sales Advocate, Coordinator I, Coordinator II, Customer Service Representative I, Customer Service Representative II, Customer Support Specialist, Distribution Center Coordinator, Fraud Analyst, Retail Sales Consultant, Sales Support Representative, Senior Retail Sales Consultant, Small Biz Advisor, Technician I – MSC/RNOC, Technician II – MSC/RNOC, Telesales Representative, Wireless Technician, and Work Force Administrator.

[4] SSRs were responsible for greeting customers and receiving inventory shipments in the Employer's retail stores. The Employer eliminated the classification because customers became frustrated that SSRs could not serve them. When the Employer eliminated the classification, all SSRs who so desired were transferred to an RSC position in their stores without the need to apply.

[5] Article 2 "Recognition and Establishment of Unit," Section 1 provides, "The Company recognizes the Union as the sole collective bargaining agent for the purpose of collective bargaining with respect to rates of pay, wages, hours of employment and other conditions of employment for those covered employees in

AT&T Mobility Services LLC
Case 10-UC-280972

sought to remove the outside sales exclusion from the Black CBA, but the Employer rejected the Union's proposal, and the contractual recognition clause remained the same.

> B. *The Employer's Newly Created In-Home Expert Business Line and the ISC and ISSS Positions*

The Employer acquired DirecTV, which provides satellite and entertainment services, in July 2015. At the time, DirecTV had 25 million subscribers, 20 million of whom had a wireless provider other than AT&T Mobility.

Between late 2016 and early 2017, the Employer created a new sales channel to target and convert the 20 million DirecTV customers to the Employer's wireless service. That sales channel, known as In Home Experts (IHX) formally launched on August 1, 2017. The Employer considered IHX to be an entirely new business, the purpose of which was to send Employer representatives to the homes of DirecTV customers receiving DirecTV installation or service to convert wireless customers from T-Mobile, Sprint, or Verizon to AT&T Mobility. IHX has a separate business plan, management, employees, equipment, systems, inventory, and operating budget from retail stores. IHX employees are subject to different policies and receive different benefits than bargaining unit employees. Because sales occur in customers' homes, IHX employees, unlike employees working in the Employer's retail stores, must obey specific federal, state, and local laws related to sales at residences.

When IHX launched in August 2017, the Employer established multiple teams, each assigned to a hub office. IHX hubs are located in various Employer facilities, including corporate office buildings, technician garages, former device support centers, and certain retail stores. Hubs located in the same building as a retail store have separate work areas for the retail and IHX employees.

Each IHX team reports to an Integrated Solutions Manager (ISM) and includes 8 to 15 ISCs and one ISSS, the two positions in dispute.[6] The ISM reports to an Integrated Solutions Director (ISD); the ISD reports to one of four Assistant Vice Presidents, who report to the Senior Vice President of National Distribution. The Senior Vice President of National Distribution reports to the Executive Vice President of Distribution, who provides oversight for the Employer's retail store and IHX lines of business.

In 2017, the Employer posted the newly created ISC and ISSS positions on its CareerPath system. CareerPath is used for both internal and external hiring. The Employer posted the ISC and

---

CWA District 3. The term covered employee and/or employees as used in this Agreement shall mean, those employees within the job titles set forth in Appendix A, but excluding Outside Premise Sales Representatives and all employee exempt by the National Labor Relations Act." The classifications listed above at footnote 3 are listed in Appendix A.

[6] The record reflects that, at times, the ISC position is also referred to as "experts" and the ISSS position is also referred to as "Sales Support Leads" or "SSLs."

AT&T Mobility Services LLC
Case 10-UC-280972

ISSS positions internally in 2017 and externally in 2018. Some of the internal applicants were members of the bargaining unit; other applicants were not. At hearing, the Employer's human resources business partner supporting IHX (IHX HR Partner) testified that while bargaining unit RSCs have the necessary knowledge about the Employer's products, not all RSCs are "true sellers" with the ability to craft an offer for a potential client who has been surprised at his or her home. Thus, some RSCs successfully applied for the new ISC positions, and others were unsuccessful.[7] ISMs made the final hiring decisions for their teams. The Employer treated the ISCs and ISSSs as hires rather than transfers and, if an ISC or ISSS wishes to return to work in a bargaining unit position, he or she must apply for that position. The IHX HR Partner further testified that IHX's human resources team exercises no control over bargaining unit employees.

C.  The ISC and ISSS Job Duties

There are approximately 1,081 employees classified as ISCs and approximately 97 employees classified as ISSSs within the nine states covered by the Black CBA. The job duties of ISCs and ISSSs are identical throughout the country.

ISC employees, as guided by ISSS employees, arrive unannounced and uninvited at residences in which a DirecTV technician is providing installation and other services.[8] If invited into the customer's home, the ISC provides a company-described "white glove" experience. During this experience, the ISC assists with downloading/installing DirecTV and AT&T apps onto the customer's devices. Through this process, the ISC evaluates the customer's wireless needs prior to selling new accounts. The ISC may have to schedule a return visit to the home to meet with other members of the family and complete the sale. Sometimes ISCs meet with potential customers outside regular business hours. ISCs manage their own time during the day and take breaks whenever they choose. ISCs have "level 1-A" access within the Employer's OPUS system and do not need to consult with a manager to waive activation fees, waive restocking fees, offer free phones, or issue discounts. Approximately 97 percent of IHX sales involve new customers, new accounts, or new lines.

As ISC employees perform outside sales, they drive company vehicles containing up to $10,000 in inventory for which they are held accountable. Given that sales are conducted in residential locations, IHX employees are subject to various levels of governmental regulations and are required to complete a federally mandated Mobility Order Receipt form allowing the residential customer three business days to rescind any purchase. This form is not required for retail store sales.

---

[7] The IHX HR Partner was unable to estimate the percentage of IHX employees who formerly worked in the bargaining unit positions.

[8] The Employer does not employ DirecTV technicians.

AT&T Mobility Services LLC
Case 10-UC-280972

ISSS employees work in locked, closed-door facilities known as IHX hubs.[9] If an IHX hub happens to be in the same building as a retail store, IHX employees do not work in the store, and likewise the retail employees do not work in the hub. ISSS job duties include scheduling customers' appointments; dispatching or assigning ISCs to a customer's home; coaching the ISCs on sales procedures; and providing administrative and sales support. Because there are more DirecTV jobs than there are ISCs, an ISSS must carefully choose which DirecTV customers are the best targets for an ISC.[10] ISSSs also maintain and are accountable for inventory valued at up to $500,000. In addition, ISSSs manage company vehicle maintenance within their team's fleet; prepare for audits; research state and local laws regarding solicitation permits and licensing; and occasionally become involved when a customer is dissatisfied with an ISC. ISSSs set their own schedules and may work irregular hours or from home.

    D.  *Related Proceedings – The Union's Grievance and the Region 8 Decision*

On July 10, 2019, two years after the Employer launched IHX, the Union filed a grievance alleging that the Employer violated Article 2 (the recognition clause) of the Black CBA by diverting bargaining unit work outside the unit and by failing to comply with the contractual process for negotiating wage rates for newly created bargaining unit job classifications – referring to the ISC and ISSS positions. In the grievance, the Union seeks to include the ISC and ISSS positions in the existing bargaining unit. The Employer refuses to process the grievance arguing that the Black CBA's recognition clause does not include ISCs and ISSSs, therefore the requested remedy could only be appropriately reached following an accretion analysis and a finding that the IHX employees share an overwhelming community of interest with the Black CBA bargaining unit employees. The Union has filed suit to compel arbitration.

On October 28, 2019, the Employer also filed a unit clarification petition in Region 8, Case 08-UC-250707, asserting that the ISC and ISSS positions should be excluded from the Orange CBA bargaining unit. Although the Orange CBA is substantially the same, it is not identical to the Black CBA. Region 8 issued its Decision and Order, on August 25, 2020, finding that the IHX employees retained their separate group identity and do not share a community of interest with the Orange CBA bargaining unit and clarifying the unit to exclude the ISC and ISSS positions.

  **II.**  **Analysis**

The issues here are three-fold: 1) whether the instant petition should be deferred to the parties' grievance-arbitration procedure; 2) whether the substantive accretion issue is precluded under the doctrine of collateral estoppel; and 3) whether the Black CBA bargaining unit should be clarified to exclude the ISC and ISSS positions. The parties filed briefs that I have duly considered.

---

[9] Although the ISCs visit hubs to refill their trunks or drop off paperwork, they do not work at the hubs. The vast majority of their workday is spent in customers' homes.

[10] The Employer does not assert that ISSSs are statutory supervisors within the meaning of Section 2(11) of the Act. However, during the hearing the Employer's witnesses emphasized that ISSSs use independent judgment when dispatching ISCs to customers.

AT&T Mobility Services LLC
Case 10-UC-280972

      The Employer argues that the Union's grievance presents core representational issues that must be decided by the Board, not an arbitrator. It further asserts that collateral estoppel applies and, therefore, I should give preclusive effect to Region 8's decision. As to the substantive accretion issue, the Employer contends that the Black CBA's unit should be clarified to exclude the ISC and ISSS positions.

      On the other hand, the Union argues that the petition should be deferred to the grievance-arbitration procedure. It also argues that collateral estoppel is not appropriate because the Region 8 decision applied a general accretion analysis rather than a community of interest analysis pursuant to *PCC Structurals, Inc*., 365 NLRB No. 160 (2017) and *Boeing Co*., 368 NLRB No. 67 (2019).[11] Finally, the Union contends that the ISC and ISSS positions should be included in the unit.

      As detailed below, I find that deferral is inappropriate; collateral estoppel does not apply; and the ISC and ISSS positions should be excluded from the Black CBA bargaining unit, as they do not share a sufficient community of interest with the unit classifications. I will first analyze the procedural arguments and then the substantive accretion issue.

      *A.   Deferral to the Parties' Grievance-Arbitration Procedure is Inappropriate*

      As the Acting Regional Director correctly noted in the Region 8 decision, when a party utilizes a contractual means to resolve a unit placement dispute, the Board will consider a unit clarification petition regardless of when in the bargaining cycle the petition was filed. *Ziegler, Inc*., 333 NLRB 949, 949 (2001), distinguishing *Bethlehem Steel Corp*., 329 NLRB 243 (1999). In doing so, the Board reasoned such matters are not appropriate for arbitration and emphasized its exclusive autonomy to determine "questions regarding representation, accretion and unit placement." *Ziegler,* 333 NLRB at 949. The *Ziegler* exception applies even if there is only a pending grievance and not an arbitration award, "since … a pending grievance … could ultimately result in an incongruous arbitration award." Id. at 950. Accordingly, I will not defer this matter to the parties' grievance-arbitration procedure.

---

[11] The Union argues that although *PCC Structurals* and *Boeing* arose in the context of representation petitions rather than unit clarification petitions, they should be applied here. This argument is not persuasive. The Union cites no case, and I can find none, in which the Board has applied *PCC Structurals* and *Boeing* in a unit clarification context. Rather, the Board has continued to apply the law as cited in the Region 8 decision as well as this decision. See *Recology Hay Road,* 367 NLRB No. 32 at slip op. 2-3 (2019) (applying the well-established *Safeway Stores* standard and community of interest analysis). The Board has historically declined to accrete employees into an existing bargaining unit in the absence of an overwhelming community of interest, as employees accreted into a bargaining unit, unlike employees covered by a representation petition, do not have the opportunity to vote on whether they wish to be represented. Furthermore, there would be no change in the outcome of this matter even if I were to apply *PCC Structurals* and *Boeing* due to, among other things, a complete lack of functional integration and shared supervision.

AT&T Mobility Services LLC
Case 10-UC-280972

      *B. The Employer's Collateral Estoppel Motion is Moot*

The Employer filed a motion arguing that collateral estoppel applies, and the Region 8 decision should have a preclusive effect on the decision here. To this end, the Employer argues that the parties are the same; the facts regarding its operations are the same; the relevant accretion factors are the same; and the core questions regarding representation are the same. I find that the Employer's motion is moot given that I reach the same conclusion as the Acting Regional Director in Region 8. The Employer did not cite to, nor have I found, Board cases applying the doctrine of collateral estoppel in cases involving unit clarification. Notably, the Board infrequently applies collateral estoppel in representation proceedings. Further, although the Orange CBA at issue in Region 8 and the Black CBA at issue here are similar, they are not identical. Thus, I find that a separate analysis of the Black CBA bargaining unit composition is warranted.

      *C. The Black CBA Bargaining Unit Should be Clarified to Exclude the ISC and ISSS Positions*

          i.    <u>General Legal Principles</u>

A unit clarification petition to accrete employees to an existing unit is "appropriate for resolving ambiguities concerning the unit placement of individuals who, for example, come within a newly-established classification of disputed unit placement or, within an existing classification which has undergone recent, substantial changes in its duties and responsibilities ... so as to create a real doubt as to whether the individuals in such classification continue to fall within the category— excluded or included— that they occupied in the past." *Union Electric Co.* 217 NLRB 666, 667 (1975). If employees in the newly established classifications "perform the same basic functions historically performed by the members of the bargaining unit," the Board will find that the new classifications are simply subsumed within the existing unit, and no accretion analysis is necessary. *Developmental Disabilities Institute*, 334 NLRB 1166, 1166 (2001), citing *Premcor, Inc.,* 333 NLRB 1365 (2001). The same reasoning applies when the new classifications are performing work that is simply a natural outgrowth of unit work. *Southwestern Bell Telephone Company,* 222 NLRB 407 (1976). Here, no party contends, and there is no evidence, that the ISC and ISSS employees perform the same basic functions historically performed by RSCs. Nor does either party assert that the disputed employees perform work that is a natural outgrowth of unit work. [12] As the Board's test in *Premcor* is not satisfied, I turn to the Board's traditional accretion analysis.

---

[12] Unlike in the Region 8 case, here the Union does not argue that the ISCs and ISSSs perform the same basic functions historically performed by the RSCs employees. Nonetheless, I find the Board's decision in *Premcor* to be inapposite, and I conclude that the newly created ISC and ISSS positions do not perform the same duties as the RSC unit position. Though it is true that both ISCs and RSCs are involved in sales, the Board does not compare employee functions at the broad level, as it explained in *AT Wall*, 361 NLRB 695, 697 (2014), and *Walt Disney Parks and Resorts US*, 367 NLRB No. 80, slip op. at 3 (2019). RSCs and ISCs use different skillsets to interact with different types of customers, in different situations. RSCs are closely supervised by managers as they interact with established customers in a retail setting. ISCs, by contrast, attempt to sell the Employer's products to customers who are currently using the Employer's competitors' services. ISCs must build relationships over time and work under regulations specific to in-home sales.

AT&T Mobility Services LLC
Case 10-UC-280972

In applying the traditional accretion analysis, the Board examines the community of interest factors (that is, integration of operations; centralized control of management and labor relations; geographic proximity; similarity of terms and conditions of employment; similarity of skills and functions; physical contact among employees; collective bargaining history, degree of separate daily supervision, and degree of employee interchange) to determine whether the employees in the position at issue constitute a separate appropriate unit or constitute an accretion to the existing bargaining unit. See *Frontier Telephone of Rochester,* 344 NLRB 1270, 1271 (2005); *Safeway Stores,* 256 NLRB 918, 918 (1981). Accretion is only found when the employees sought to be added to an existing bargaining unit share an overwhelming community of interest with the preexisting unit to which they are accreted. Id. Also see *Recology Hay,* 367 NLRB No. 32 at slip op. 2. Cases in which every factor favors accretion are rare, as "the normal situation presents a variety of elements, some militating toward and some against accretion, so that a balancing of factors is necessary." *E.I. Du Pont, Inc.,* 341 NLRB 607, 608 (2004), quoting *Great A & P Tea Co. (Family Savings Center)*, 140 NLRB 1011, 1021 (1963). However, the two most important factors are employee interchange and common day-to-day supervision. *Recology Hay Road,* 367 NLRB No. 32 at slip op. 3; *Frontier Telephone,* 344 NLRB at 1271 fn. 7.

  ii. <u>The ISCs and ISSSs Do Not Share a Community of Interest with Unit Employees.</u>

Based on an examination of the record, and for the reasons stated below, I find that an accretion of this unit would be inappropriate. In this regard, I find that the record does not support the conclusion that the ISCs and ISSSs share an overwhelming community of interest with employees in the existing bargaining unit.

- Integration of Operations

"Functional integration of operations means in the context of an accretion that the work of one group of employees is functionally dependent upon or closely related to that of a preexisting unit." *Frontier Telephone,* 344 NLRB at 1291 fn. 39, citing *Progressive Services Die Co.,* 323 NLRB 183, 186 (1997). Here, there is no indication that the ISCs' and ISSSs' work is in any way dependent upon the work of the existing bargaining unit employees. To the contrary, the record demonstrates the Employer's IHX sales channel has a separate business plan, management, employees, equipment, systems, inventory, and operating budget. I find that this factor weighs against accretion.

---

There is also a complete lack of integration and common day-to-day supervision between ISCs and RSCs. Finally, the parties have historically administered the Black CBA to exclude outside sales.

AT&T Mobility Services LLC
Case 10-UC-280972

- Centralized Control of Management and Labor Relations and Degree of Separate Daily Supervision

There is no centralized management or administrative control between the Employer's IHX and its retail divisions. The management teams are distinct and separate through multiple organizational levels, except for the Executive Vice President of Distribution, who sits near the top of the managerial hierarchy. The human resource functions for each division is also separate. IHX employees and bargaining unit employees share no common daily supervision whatsoever. I find that these factors weigh against accretion.

- Geographic Proximity and Physical Contact Among Employees

The evidence demonstrates that the ISCs and ISSSs do not work in the same locations as the members of the existing bargaining unit. The bargaining unit RSCs work in retail stores, while the ISCs work in customers' homes with occasional visits to hubs. The ISSSs work in hubs or, preference and situation permitting, from their own homes. Even when a hub and a retail store are located in the same building, any interaction between the IHX employees and the retail employees is merely incidental. In *NV Energy, Inc.,* 362 NLRB 14, 17 (2015), the Board held that incidental physical contact between employees in the existing collective-bargaining unit and the group of employees sought to be added is insufficient to support an accretion. Accordingly, I find that these factors weigh against accretion.

- Similarity of Terms and Conditions of Employment

In addition to working in different locations, ISCs and ISSSs work with less supervision than bargaining unit employees who work in retail stores. Accordingly, ISCs and ISSSs schedule their own breaks and lunches and may work non-traditional hours, as compared to retail store employees, who must work and take breaks as scheduled by a manager. Because bargaining unit employees' benefits are dictated by the collective-bargaining agreement, IHX employees also receive different benefits. I find that this factor weighs against accretion.

- Similarity of Skills and Functions

RSCs and ISCs are both responsible for selling the Employer's products. However, RSCs and ISCs use different skillsets to interact with different customers, in different situations. RSCs are closely supervised by managers as they interact with established customers in a retail setting. ISCs, by contrast, attempt to sell the Employer's products to customers who are currently using the Employer's competitors' services. ISCs must build relationships over time and work under regulations specific to in-home sales. In addition, ISCs are responsible for their assigned company vehicles and significant inventory while RSCs have no equivalent duties or responsibilities. I find that this factor weighs against accretion.

AT&T Mobility Services LLC
Case 10-UC-280972

- Collective-Bargaining History

The parties' Black CBA has historically excluded "Outside Premise Sale Representatives" from the unit. During 2006 collective-bargaining negotiations, the Union sought to remove the outside sales exclusion from the Black CBA, but the Employer did not agree to the Union's proposal, and the verbiage of the contractual recognition clause remained the same. Thus, this factor weighs against accretion.

- Degree of Employee Interchange

The Board, when analyzing the accretion factor of employee interchange, distinguishes between temporary transfers and permanent transfers. In *Frontier Telephone*, quoting *Novato Disposal Services,* 330 NLRB 632 fn. 3 (2000), the Board explained "permanent transfers [of employees is] a less significant indication of actual interchange than temporary transfers." 344 NLRB at 1272.

Here, there is no temporary interchange between the bargaining unit employees and the IHX employees. An indeterminate number of the ISC and ISSS employees were once bargaining unit employees. However, the Employer required those employees to apply for the ISC and ISSS positions rather than simply transferring them. In contrast, when the Employer eliminated the SSR position, it transferred the former SSRs to other unit positions without requiring them to apply. I find that this factor weighs against accretion.

Under all the factors for consideration and record evidence, it is apparent that the ISC and ISSS employees have a separate identity from the sales employees and do not share an overwhelming community of interest with the existing bargaining unit employees.

### III.  Conclusion

I conclude that the disputed ISC and ISSS positions have retained their separate group identity and do not share an overwhelming community interest with the Black CBA bargaining unit employees. As the criteria to support an accretion have not been met, I will clarify the unit to exclude the IHX positions of ISC and ISSS.

AT&T Mobility Services LLC
Case 10-UC-280972

## ORDER CLARIFYING BARGAINING UNIT

**IT IS ORDERED** that the collective-bargaining unit represented by the Union be clarified as follows:

**Unit**

**Included:**  The Company recognizes the Union as the sole collective bargaining agent for the purpose of collective bargaining with respect to rates of pay, wages, hours of employment and other conditions of employment for those covered employees in CWA District 3. The term covered employee and/or employees as used in this Agreement shall mean those employees within the job titles set forth in Appendix A.

**Excluded:** Outside Premise Sales Representatives, including job titles within the AT&T Mobility Home Solutions department, and additionally including, but not limited to, Integrated Solutions Consultants and Integrated Sales Support Specialists and all employees exempt by the National Labor Relations Act.

## RIGHT TO REQUEST REVIEW

Pursuant to Section 102.67 of the Board's Rules and Regulations, a request for review may be filed with the Board at any time following the issuance of this Decision until 10 business days after a final disposition of the proceeding by the Regional Director.  Accordingly, a party is not precluded from filing a request for review of this decision after the election on the grounds that it did not file a request for review of this Decision prior to the election.  The request for review must conform to the requirements of Section 102.67 of the Board's Rules and Regulations.

A request for review must be E-Filed through the Agency's website and may not be filed by facsimile.  To E-File the request for review, go to www.nlrb.gov, select E-File Documents, enter the NLRB Case Number, and follow the detailed instructions.  If not E-Filed, the request for review should be addressed to the Executive Secretary, National Labor Relations Board, 1015 Half Street SE, Washington, DC 20570-0001, and must be accompanied by a statement explaining the circumstances concerning not having access to the Agency's E-Filing system or why filing electronically would impose an undue burden.  A party filing a request for review must serve a copy of the request on the other parties and file a copy with the Regional Director.  A certificate of service must be filed with the Board together with the request for review.

Neither the filing of a request for review nor the Board's granting a request for review will stay the election in this matter unless specifically ordered by the Board.  If a request for review of a pre-election decision and direction of election is filed within 10 business days after issuance of the decision and if the Board has not already ruled on the request and therefore the issue under review remains unresolved, all ballots will be impounded. Nonetheless, parties retain the right to

AT&T Mobility Services LLC
Case 10-UC-280972

file a request for review at any subsequent time until 10 business days following final disposition of the proceeding, but without automatic impoundment of ballots.


Dated: November 3, 2021

*/s/ Lisa Y. Henderson*

LISA Y. HENDERSON
REGIONAL DIRECTOR
NATIONAL LABOR RELATIONS BOARD
REGION 10
401 W. PEACHTREE STREET, NE
SUITE 472
ATLANTA, GA 30308